## MALTER v. CUTTING FRUIT PACKING COMPANY.

### S. F. No. 1877; October 29, 1901.

#### 66 Pac. 582.

**Sale—Contract to Buy Crop of Raisins—Construction.**—The parties executed an agreement by which defendant agreed to buy plaintiff's "partial crop as they may select crop of raisins from vineyard . . . . M. (product of 1897), to be delivered in sweat-boxes at buyer's packing-house in good, merchantable condition, on the following terms: . . . . Muscat and Malaga delivery not later than October 15, 1897. Price per pound, 2½c.; [defendant] to pick and cure and put in sweat-boxes. Muscats to be graded from trays and sweat-boxes into two grades . . . . 'London Layers' and 'Loose Muscatels.'" Held, that as under this contract the grapes were to be picked and cured by defendant, and such as were of merchantable quality then

became his property, and he was to put them in sweat-boxes, and plaintiff could not deliver them until this was done, and the grading from trays and sweat-boxes was the work of defendant, who could not defeat the contract by neglecting or refusing to perform such acts, plaintiff, in an action for the contract price, was not bound to allege the performance of the acts necessary by the defendant, and a complaint alleging that defendant had picked and dried a certain amount, a part of which plaintiff had delivered, and the balance of which he was ready to deliver, and that a certain amount of the contract price remained unpaid, was sufficient.

**Sale—Contract to Buy Crop of Raisins—Action for Price.—** Plaintiff brought an action for the price of raisins sold under a contract by which the defendant was to select and cure the raisins and place them in sweat-boxes, in which they were to be delivered by the defendant. There was evidence that defendant picked a certain amount of grapes, a certain portion of which was hauled by plaintiff's teamsters and delivered by them, after which defendant refused to allow any more to be hauled; that the price had gone down, and defendant claimed that he could not handle any more at the contract price; that the balance of the raisins was on trays or in boxes; that from half to two-thirds of those undelivered were of as good quality as those delivered; that subsequently they were damaged or their value destroyed by rains. Held, that the evidence was sufficient to sustain a verdict for the plaintiff.

**Sale.—In an Action for the Contract Price of Raisins,** a part of which the defendant had refused to receive, it was not error to refuse to permit a question to be asked plaintiff's witness on cross-examination, as to whether there had not been some complaint about the condition of the raisins, as the question was not confined to complaints by persons connected with the transaction.. The error, if any, in refusing such question, was rendered harmless by allowing the witness, in reply to subsequent questions, to fully explain the condition of the raisins.

**Sale.—In an Action for the Contract Price of Raisins** which defendant had picked and cured in plaintiff's vineyard, and a part of which he subsequently refused to receive, alleging that they were damaged by rain, the error in allowing plaintiff to give evidence as to whether defendant did anything to prevent the raisins from being damaged, there being no issue as to defendant's negligence, was not prejudicial, as plaintiff claimed to recover only for such raisins as were merchantable, and the court instructed that his recovery must be so limited.

**Sale.—In an Action for the Contract Price of Raisins** which defendant had picked and cured in plaintiff's vineyard, but the delivery of part of which he subsequently refused on the ground that they had been damaged by rains, this part having been used by plaintiff in his winery, the introduction of evidence by him that they

were of no value at the time they were so used, though such evidence was immaterial, was harmless error, in view of the fact that defendant had abandoned such portion before their use, and that plaintiff only claimed to recover for such as were of good, merchantable quality.

**Sale.**—Where, in an Action for the Contract Price of Fruit sold, defendant wished to show that a certain payment was made to M., as a step toward proving her to be the plaintiff's agent, and such evidence was refused, but the witness testified as to what M. did and said in the course of employment, the error in rejecting the evidence was not reversible.

APPEAL from Superior Court, Fresno County; E. W. Risley, Judge.

Action by G. H. Malter against the Cutting Fruit Packing Company. Judgment for plaintiff, and from an order denying a motion for a new trial defendant appeals. Affirmed.

L. L. Cory for appellant; George E. Church for respondent.

CHIPMAN, C.—Action on contract for sale and purchase of certain raisins. The cause was tried by a jury, and plaintiff had the verdict. Defendant appeals from the order denying its motion for a new trial. Defendant interposed a general demurrer to the complaint, which was overruled, and it objected to any evidence in support of the complaint, on the ground that it failed to state a cause of action, and on the further ground that the contract is too uncertain and ambiguous to found an action thereon, and that it does not appear what crop, if any, was to be sold, nor is there any allegation in the complaint from which that fact can be determined. The objection was overruled and exception reserved.

It is alleged in the complaint that the parties executed the following agreement on the day of its date:

"Fresno, Cal., September 15, 1897.

"G. H. Malter agrees to sell and Cutting Fruit Packing Company agrees to buy seller's partial crop as they may select crop of raisins from vineyard known and described as follows: . . . . acres, Malcolmson, Youngberg, and Posen (product of 1897), to be delivered in sweat-boxes at buyer's packing-house in Fresno in good, merchantable condition, on the

following terms and conditions: Muscat and Malaga delivery not later than October 15, 1897. Price per pound, 2½c.; the Cutting Fruit Packing Co. to pick and cure and put in sweat-boxes. Muscats to be graded from trays and sweat-boxes into two grades, commonly known as 'London Layers' and 'Loose Muscatels.' Terms one-half cash when picked, interest ten per cent. per annum on advances, balance on delivery.

"(Signed)  G. H. MALTER.

"(Signed)  CUTTING FRUIT PACKING CO.,

"Per F. B. WILSON."

That under said agreement defendant entered upon the vineyard specified in the contract as the Malcolmson vineyard, and did pick and dry 43 909/2000 tons of raisins, and by virtue of said agreement there became due plaintiff the sum of $2,174.08. It is alleged that plaintiff "has fully performed all the terms and conditions of said agreement to be by him kept and performed," and that plaintiff delivered to defendant at its packing-house at Fresno 38 tons and 917 pounds of raisins so picked and dried by defendant, and offered to deliver and tendered to defendant at its said packing-house the balance of said raisins, to wit, 16 tons and 616 pounds, "and this plaintiff has been and was at all times ready and willing to deliver the same, and to keep and perform the said agreement on its [his] part to be kept and performed, and this plaintiff requested and demanded of said defendant that it perform and carry out said contract according to its terms, and that it receive said raisins and pay to this plaintiff the said sums so agreed to be paid, . . . . but that said defendant has failed and refused, and still fails and refuses, to keep and perform the terms . . . . of said agreement, . . . . and has failed and refused, and still fails and refuses, to comply with said request, . . . . save and except the said amount, . . . . and still fails and refuses to pay said sum, or any part thereof, . . . . except the sum of $850"; "that, by reason of the failure and refusal of said defendant to perform its said contract, . . . . plaintiff has been damaged," etc.

It is not easy to determine just what the contract means. The parties, however, understood it to have some meaning, and proceeded to act under it. It is our duty to give it some

meaning, if we can reasonably do so. Respondent contends that the sale was of grapes on the vines, the defendant to have the right to select and pick such as it might regard suitable for its purpose; that the title to the property vested in defendant when it selected, picked and took charge of the grapes (i. e., as we understand respondent, the selection was to be made on the vines, and not on the trays or in the sweat-boxes); that plaintiff had nothing to do but haul the raisins to the packing-house at Fresno. Appellant contends that on its refusal to receive the raisins the property belonged to plaintiff, and he cannot retain the raisins and recover the full contract price; that defendant was to purchase such raisins as it should select from plaintiff's crop; that they were to be in good, merchantable condition, and to be delivered not later than October 15, 1897; that it nowhere appears in the complaint that defendant has selected any raisins from plaintiff's crop, or that they were merchantable, or that they were delivered before October 15th, and that all these facts must appear before any liability attaches to defendant, and hence the complaint is insufficient. Defendant did not contract to pay two and one-half cents per pound for grapes on the vines, but the agreement was to pay for raisins, which means grapes cured in the form of raisins. The contract does not state who was to haul the raisins to Fresno, but, looking at the entire contract, as we must, for a just interpretation of it, we think the hauling was to be done by plaintiff; and plaintiff so construes the contract, as appears from the complaint. The grapes were to be picked and cured by defendant and put in sweat-boxes by defendant, and what were grapes when picked became raisins when dried; and in this condition plaintiff was to haul them to, or, as the contract says, deliver them at, Fresno. But they were also to be "in good, merchantable condition" (i. e., they were to be of good, merchantable quality). It being the duty of defendant to put the raisins in sweat-boxes, plaintiff could not deliver them, and was not called on to deliver them, until this was done, or unless defendant permitted them to be delivered in some other receptacle. On the other hand, when sufficiently cured on the trays to go into the sweat-boxes such of the raisins as were "in merchantable condition," or of merchantable quality, should be regarded as defendant's property for which defendant would be liable, if defendant refused to al-

low plaintiff to haul them to Fresno. The grading from trays and sweat-boxes into two grades—London layers and loose Muscatels—was the work of defendant, but did not affect the price to be paid, or defendant's duty to pay for them. Defendant could not defeat the contract by neglecting or refusing to put the raisins in sweat-boxes, nor by neglecting or refusing to do the grading. In the phrase "agrees to buy seller's partial crop as they may select crop of raisins from vineyard," etc., the word "select" does not mean that defendant was to select raisins after they were in the sweat-box, and that prior to this time the raisins belonged to plaintiff, but it means that defendant was to select grapes in the vineyard (i. e., could pick and cure such grapes and convert them into raisins as it wished to), and it had the entire vineyard to select from. The raisins for which it was liable were such as were in merchantable condition, either on the trays or in the sweat-boxes. The complaint alleges that defendant entered upon the vineyard of plaintiff and picked and dried (and "dried" must be taken as used in the sense of "cured") 43 909/2000 tons of raisins, and by virtue of the agreement there became due therefor $2,174.08; that plaintiff delivered to defendant at Fresno 38 tons and 917 pounds so picked and dried by defendant, and offered to deliver the balance, etc. As we construe the contract, it was not necessary for plaintiff to allege the acts which it was defendant's duty to perform. It was sufficient to allege readiness and an offer to do what he agreed to do, which was to haul and deliver such of the raisins as defendant placed in sweat-boxes and permitted him to haul and deliver, and it is alleged that he did haul and deliver a large portion of the raisins. Plaintiff is not seeking to recover for goods which he retains. So far as the complaint shows, the raisins are still in defendant's possession. We think the complaint sufficient as against a general demurrer. The answer denied specifically the material allegations of the complaint. For further answer it was alleged that plaintiff offered to deliver certain damaged raisins after October 15th, being the raisins mentioned in the complaint as delivered, and that defendant refused to accept them under the contract, but agreed to receive them at the price of one and one-half cents per pound, to be applied toward an advance of $850 made to plaintiff by defendant, and that the raisins were received under this latter agree-

ment; denies that plaintiff ever offered to deliver raisins of a merchantable quality; that, as to the raisins not delivered, plaintiff agreed to retain them, and did retain them, to his own use.

2. It is claimed by appellant that the evidence does not support the verdict. There is evidence that defendant hauled trays to the vineyard September 20th, and commenced picking grapes on the 21st. One Dunlap had charge of the work for defendant, and delivered the raisins to plaintiff's teamsters to be hauled to Fresno. Receipts were given to the teamsters, and brought back and given to one McGee, foreman of plaintiff. These receipts were put in evidence, but do not appear in the record. We must assume that they showed the quantity delivered to be that claimed in the complaint. When the last load was delivered, there is evidence that defendant refused to allow any more to be hauled; that the price had gone down, and defendant claimed it could not handle any more at the contract price. Defendant claims that the raisins delivered were to be paid for at $30 per ton, and that the parties so agreed. But this is denied, and the evidence of plaintiff was that no such agreement was made. At this time the balance of the raisins was on trays or in boxes. They had been rained on, and there is some evidence that the trays were not stacked when they should have been to protect them from storms. There is evidence that from half to two-thirds of the sixteen tons, then undelivered, were merchantable and as good as the raisins that were received by defendant, but that defendant refused to put them in sweat-boxes or allow plaintiff to haul them to Fresno to defendant. This was in November. The raisins were finally put in boxes by defendant, and remained in that condition until the following March, when they were unfit for any use as raisins, and were meanwhile apparently abandoned by defendant. The evidence is that they had no market value. Plaintiff hauled them to his winery in March, where he used them, but whether they had any money value for that purpose was not shown by either party. The jury assessed the damage to plaintiff at $1,322.72, but the court reduced the amount to $1,299.27, to which plaintiff assented, and judgment was given for that amount. As we interpret the contract, there was evidence sufficient to justify the verdict.

3. Certain errors of law alleged to have been committed at the trial remain to be noticed. The witness McGee, foreman of plaintiff, was asked on cross-examination the following question: "There had been some complaint about the condition of those raisins, hadn't there?" It was not error to refuse the question because it was not confined to complaints made by any person connected with the transaction, and, if error, it did no harm, because the witness was next asked the condition of the raisins, which he fully explained.

4. This witness was asked by plaintiff what defendant did to protect the raisins from being rained on. Defendant objected as irrelevant, but the question was allowed. No issue of defendant's negligence was raised by the pleadings, and no evidence was admissible by either party to show negligence. It appears, however, that plaintiff claimed only for such raisins as were merchantable and in condition to be delivered; and the court instructed the jury, at defendant's request, that plaintiff could recover only for such raisins as were good, merchantable raisins at the time of delivery, or at the time plaintiff offered to deliver and defendant refused to accept. We cannot see that the evidence was prejudicial.

5. Plaintiff was permitted to testify that the rejected raisins had no value, and it is now claimed as error, because no time was fixed at which such value was testified to. I think it sufficiently appears that the witness was speaking of the time they were hauled to the winery. As defendant made no claim by way of offset or otherwise for the raisins used in the winery, the evidence had no significance and was immaterial. But as the property was abandoned by defendant, and as it makes no claim that it had any value in its condition when plaintiff took it to his winery, and as plaintiff only claims for such raisins as were good, merchantable fruit when defendant refused to allow him to haul and deliver it at Fresno, the evidence would seem to be harmless.

6. On examination of witness Langley, defendant's agent, defendant asked the question: "To whom was the payment of $850 actually made—to Mr. Malter personally, or someone for him?" Plaintiff objected, and his counsel stated: "It is admitted it is paid. We are not denying it is paid." Defendant's counsel stated that the object was to show that the money was paid to Miss Phillips, and that this was one step toward showing that she was the agent of plaintiff, and was

authorized to make the agreement to which Langley had testified, namely, that the raisins delivered were to be paid for at the rate of $30 per ton. Langley had already testified to what Miss Phillips had said and done, and that she was acting as plaintiff's manager. It appears from the evidence of the witness that he was permitted to and did testify to what Miss Phillips said and did in the course of her employment. The question was admissible under the issue raised by defendant for the purpose claimed, but the one fact excluded was too inconsequential to justify reversal. Besides, defendant should have asked the direct question, after stating its purpose, whether the $850 was not paid to her. Had this been done, the court might have admitted it.

7. Defendant asked certain instructions which were refused, and this is assigned as error. In effect, the instructions were that defendant had the right to select the raisins after it had picked and cured them and put them in the sweat-boxes; that defendant, in short, could reject raisins after it had cured them and put them in sweat-boxes ready for delivery. The contract, in our opinion, does not warrant such interpretation. Defendant had the entire handling, from vine to sweat-box, and the instructions imply that defendant might reject them, no matter from what cause the raisins became nonmerchantable after being put in the sweat-boxes. The other instructions given were as favorable to defendant as could be asked, and were, in the main, requested by defendant. The nonsuit asked at the close of plaintiff's evidence was rightly refused, and the evidence is sufficient to justify the verdict.

It is advised that the order be affirmed.

We concur: Cooper, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order is affirmed.